UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RICHARD OLAWALE, | ) | CASE NO. 4:09 CV2776 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| N.E.O.C.C., | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

Before the court is <u>pro se</u> petitioner Richard Olawale's above-captioned habeas action against Northeast Ohio Correctional Center (N.E.O.C.C.) pursuant to 28 U.S.C. § 2241. Mr. Olawale, who is incarcerated at N.E.O.C.C., seeks an Order from this court setting aside sanctions imposed by a Disciplinary Hearing Officer (DHO) on July 31, 2009. A Motion for Expedited Decision (Doc. # 7) was also filed on March 10, 2010 wherein petitioner seeks immediate relief based on respondent's failure to respond. The Motion is denied and the petition is dismissed for the reasons set forth below.

*Background*

On July 15, 2009, Mr. Olawale was charged with violating BOP Codes 217 and 408,

"Giving or Receiving Money for Prohibited Purposes" and "Conducting a Business."  He was provided a copy of the Incident Report issued the same date of the incident.  The report stated the mail room received a letter addressed to the petitioner containing a $100.00 money order naming him as the payee.  The letter was from A. Ali, a relative of inmate Nazeem Patel, who advised Mr. Ali by telephone to provide Mr. Olawale with the sum of $100.00.  Mr. Ali explained the money was for Mr. Olawale's "services pertaining to [Mr. Patel's] . . . federal appeal documentation and assistance that you have provided him, or in present or future progress."  (Ex. 4, Incdt. Rpt. ¶ V.)

A DHO hearing was held on July 20, 2009.  Mr. Olawale denied the charges.  He declined to have staff representation, but requested the presence of inmate Ilori Samuel at the hearing.  The DHO denied the request, advising the petitioner "that having a general population inmate in the special housing unit posted a threat to security of the institution." Id.  Instead, Mr. Samuel wrote a 5-1C-1, Inmate Witness Statement to summarize his testimony.  Petitioner also declined an interpreter and the presentation of any evidence in his defense.

Ultimately, the DHO found Mr. Olawale committed the prohibited acts as charged. The finding was based on the reporting staff member's statement on the incident report.  He noted that a letter from A. Ali, addressed to Mr. Olawale, was received in the mail room and contained a $100.00 money order made out to "Richard Olawale."  Mr. Ali explained in the letter that the $100.00 was payment for services Mr. Olawale provided to his relative, Nazeem Patel. The letter concluded: "We appreciate the services you provide to Nazeem Patel." Id.  The documents were subsequently forwarded to the Special Investigative Supervisor (SIS) department.

At the initial stage of the disciplinary hearing process, petitioner advised the investigating Lieutenant that he did not ask Mr. Patel for money. He then claimed he did help Mr.

Patel with a case brief and suggested Mr. Patel should 'make it worth petitioner's while' if he were released as a result of petitioner's help. Mr. Olawale then claimed he told Mr. Patel "that as inmates they could not exchange funds or anything of value." Id. Conversely, during the Unit Disciplinary Hearing (UDC) Mr. Olawale stated the incident report was not true, that he did not know what services he was reported to have provided and while Mr. Patel approached him for help, he refused to provide it.

Contrasting the different summary of facts Mr. Olawale provided, the DHO found petitioner's credibility "diminished." The DHO gave greater weight to the reporting officer's statement, as well as the letter from Mr. Ali. From these facts and Mr. Olawale's contradictory statements, the DHO concluded petitioner was conducting business and received money for a prohibited purpose. Mr. Olawale was sanctioned with the loss of 27 days Good Conduct Time (GCT), 27 days disciplinary segregation and 60 days loss of commissary privileges.

Mr. Olawale appealed the DHO's decision. A rejection notice, dated August 21, 2009, was sent to him from the Administrative Remedy Coordinator. The Coordinator explained his appeal must include only one continuation page, be legible and contain text on one side only. He was given 15 days from the date of the notice to resubmit his appeal. Petitioner resubmitted his appeal, which was received and rejected on September 8, 2009 as untimely. The Coordinator explained petitioner's BP-10 Form had to be received within 30 days of the warden's response, including mail time. The Central Office concurred with the Regional Office on November 12, 2009 and found Mr. Olawale's appeal untimely. The present petition followed.

*Standard of Review*

Once an application for a writ of habeas corpus is filed, a judge "shall forthwith

3

award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243 (emphasis added.) Based on the facts set forth above, petitioner is not entitled to habeas relief in this matter.

*28 U.S.C. §2241*

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a prisoner is challenging the fact or duration of his confinement. Preiser v. Rodriquez, 411 U.S. 475(1973). The writ of habeas corpus may be granted where the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).

A federal prisoner must first exhaust his available remedies before filing a § 2241 petition for habeas corpus relief. Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981) (per curiam). Exhaustion of available administrative remedies " 'means using all the steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).' " Woodford v. Ngo, 548 U.S. 81, 90 (2006)(quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.2002)). Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at a time [as] the prison's administrative rules require." Pozo, 286 F.3d at 1025; see also Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). If the prisoner fails to properly use the prison's grievance process, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be considered indefinitely unexhausted. Pozo, 286 F.3d at 1025; see also Woodford, 548 U.S. at 89-90

The BOP has a multi-tiered administrative remedy process through which an inmate may seek a remedy regarding aspects of confinement. See 28 C.F.R. § § 542.10-542.19. The relevant

4

procedure for appeals from a disciplinary hearing mandate: "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d). If dissatisfied with the result on the regional office level, further appeal to the general counsel is perfected using a BP-11 form. 28 C.F.R. § 542.15. Appeal to the general counsel is the final level of administrative appeal. Id

Mr. Olawale seeks an Order from this court setting aside the Central Office's decision to reject his appeal as untimely. He claims the BOP's Regional and Central Offices deliberately declined to review his claims by wrongfully deeming them untimely. He seeks to enjoin the BOP from imposing the sanctions imposed until his appeal can be fully exhausted. In spite of Mr. Olawale's request, the scope of this court's review is limited to whether he successfully exhausted his administrative remedies. It appears he has.

Petitioner submitted an appeal of his disciplinary proceeding to the Regional Office in August 2009. The initial appeal was rejected because it was not on the proper form and because the petitioner submitted too many continuation pages. Petitioner was given 15 days to correct the defects and resubmit his appeal. Although he resubmitted his appeal, allegedly within 10 days of the date of the first rejection, the Regional Office rejected it again. The resubmission was rejected, however, as though the petitioner filed a new appeal.

The September 2009 submission was clearly not a new appeal, but a resubmission in response to the initial rejection notice; and, its timeliness should have been evaluated on that basis. Given that the petitioner's second rejection was not based a failure to meet the resubmission deadline, but was rejected as an untimely new appeal, his resubmission should have been considered on the merits.

Moreover, when the petitioner filed an appeal of his second rejection to the Central Office, he advised the Central Office he was challenging the rejection of his resubmission as untimely. Despite the petitioner's explanation of events, the Central Office erroneously concurred with the findings of the Regional Office. At this point, the petitioner's administrative remedies were exhausted, as he had no other avenue for relief within the BOP's administrative process. Thus, the petitioner took all the appropriate steps to exhaust his administrative remedies in an appropriate manner.

*Petitioner's Claims Lack Merit*

The BOP is tasked with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and discipline of all persons charged with or convicted of offenses against the United States. 42 U.S.C. § 4042(a)(3). To that end, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq.

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). Where a prisoner faces the loss of GCT, however, he is entitled to some due process protection. Id. That protection includes: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. Id. Disciplinary decisions comport with the requirements of

procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445(1985).

In this case, Mr. Olawale received all of the due process safeguards delineated in Wolff. Petitioner claims the DHO amended the charges against him without authorization. Specifically, he states he was originally charged with "receiving money from another person for prohibited reasons," but the DHO amended the charges to read: "Giving money to any person for purposes." (emphasis added).

What petitioner ignores is the fact that both copies of the incident report charge him with violating Codes 217 and 408. The confusion might arise from the fact that a Code 217 violation is described as: "Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes." 28 C.F.R. §541.13, Table 3 (emphasis added). Considering the fact the incident report was prompted by N.E.O.C.C.'s receipt of Mr. Ali's letter containing a $100 money order payable to Mr. Olawale, it is clear he was being charged with "receiving money from."

To the extent the petitioner argues there was insufficient evidence to sustain the guilty finding, his claim is without merit. The evidence presented to the DHO consisted of an incident report in which the reporting officer charged that a letter addressed to petitioner was received at N.E.O.C.C., and the letter described payment to Mr. Olawale for services he provided a fellow inmate and the money order payable to petitioner. Finally, Mr. Olawale's contradictory versions of the facts undermined the DHO's confidence in the truth of his statements. Considering the totality of the circumstances, the DHO had some evidence to find petitioner guilty of violating Codes 217 and 408.

*Conclusion*

Based on the foregoing, this petitioner's Motion for Expedited Decision (Doc. # 7) is **denied** and the petition is **dismissed** with prejudice. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


S/Peter C. Economus - 3/24/10
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE